**\*\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

NOV 06 2009

at ___ o'clock and ___ min. ___ M.
SUE BEITIA, CLERK

STEVEN D. LEE and KMK HOLDINGS, LLC,
Plaintiffs-Appellants,

vs.

HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE UNDER
POOLING AND SERVICING AGREEMENT DATED AS OF
APRIL 1, 2007 SG MORTGAGE SECURITIES TRUST 2007
NC1 ASSET BACKED CERTIFICATES, SERIES 2007 NC1,
Defendants-Appellees,

and

JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10;
DOE PARTNERSHIPS 1-10; DOE TRUSTS 1-10; and
DOE ENTITIES 1-10, Defendants.

NO. 29744

CERTIFIED QUESTION FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI'I
(CIV. NO. 08-00546)

NOVEMBER 5, 2009

MOON, C.J., NAKAYAMA, ACOBA, AND DUFFY, JJ.
AND INTERMEDIATE COURT OF APPEALS JUDGE FUJISE,
ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY DUFFY, J.

The United States District Court for the District of Hawai'i (District Court) certified the following question of law to the Hawai'i Supreme Court:

> Where a mortgagor cures its default prior to a foreclosure proceeding pursuant to [Hawai'i Revised Statutes (HRS)] § 667-5, but an auction inadvertently goes forward, is a valid agreement created entitling the high bidder at the auction to lost profits?

Based on the analysis below, we hold that a valid agreement <u>is</u> <u>not</u> created in such a situation and that the high bidder is entitled only to a return of his or her downpayment plus interest.

## I.   BACKGROUND

### A.   Factual Background

Defendants-Appellees HSBC Bank USA, National Association as Trustee under Pooling and Servicing Agreement Dated as of April 1, 2007 SG Mortgage Securities Trust 2007 NC1 Asset Backed Certificates, Series 2007 NC1; John Does 1-10; Jane Does 1-10; Doe Corporations 1-10; Doe Partnerships 1-10; Doe Trusts 1-10; and Doe Entities 1-10 (collectively Defendant) is the holder of a mortgage (the mortgage) dated October 2, 2006, recorded in the State of Hawai'i Bureau of Conveyances, on real property located at 1228 Nohea Street in Kalaheo, County of Kaua'i, Hawai'i (the Property).  The mortgage secures a loan of $134,500 to mortgagors James and Claudette Muchmore (the Muchmores).

Prior to August 22, 2008, the Muchmores were in default on the loan secured by the Mortgage.  Defendant, through its servicing agent HomEq Servicing (HomEq), began nonjudicial foreclosure on the Property.  To that end, in July and August 2008, Defendant's foreclosure counsel, Leu & Okuda, published

2

notice of Defendant's intent to foreclose pursuant to Hawai'i Revised Statutes (HRS) sections 667-5 through 667-10 by public auction to be held on August 26, 2008.

On August 20, 2008, HomEq faxed a letter to the Muchmores providing them a reinstatement quote to bring their payments on the loan current.  The letter calculated that the Muchmores owed $14,399.86, through August 26, 2008.  The letter explained that HomEq

> expressly reserves its right to continue with any
> enforcement action until the loan is fully reinstated (no
> longer delinquent) or is paid in full.  Nothing herein
> constitutes nor shall be construed as a waiver of the rights
> of the lender pursuant to the terms of your loan documents.

The Muchmores wired $14,399.86 to HomEq on August 22, 2008, which HomEq accepted, as indicated by its internal system noting that the Muchmores' loan was reinstated.  On August 25, 2008, HomEq advised its vendor to stop the foreclosure sale, but the vendor failed to advise Defendant's foreclosure counsel, Leu & Okuda, to stop the foreclosure sale.

On August 26, 2008, Leu & Okuda -- unaware that the Muchmores had brought their loan current -- conducted the foreclosure auction on the Property.  Plaintiff Steven Lee (Lee), attending the auction individually and in his capacity as manager of Plaintiff KMK Holdings, LLC (KMK) (collectively Plaintiffs), submitted the winning bid of $302,000 for the Property.  Lee gave Leu & Okuda checks totaling $33,000 as a downpayment on the

Property.  In return, Leu & Okuda provided Lee a Receipt and Disclosure stating that the Property was to be conveyed by Defendant's quitclaim conveyance within 35 days of recording the Affidavit of Sale and upon payment by Lee of all costs related to the sale of the Property.

Leu & Okuda later informed Lee that the Muchmores had reinstated the loan prior to the auction and therefore returned Lee's downpayment checks totaling $33,000 as well as a check for $99.45 representing accrued interest.  On September 10, 2008, counsel for Plaintiffs sent a demand letter to Leu & Okuda stating that Lee was ready, willing, and able to purchase the Property and therefore rejected Defendant's attempted rescission of the auction sale.  Defendant has since asserted that the sale of the Property is void due to the loan reinstatement, resulting in Plaintiffs being entitled only to the return of their downpayment checks and accrued interest.

B.   Procedural Background

On October 15, 2008, Plaintiffs filed their Complaint in the State of Hawai'i Circuit Court of the First Circuit, alleging claims for breach of contract seeking specific performance or damages (counts I-II), and violation of HRS section 480-2(a) (count III).  On December 4, 2008, Defendant removed the case to the District Court.

**\*\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

On January 8, 2009, Plaintiffs filed their Motion for Partial Summary Judgment on their breach of contract claim for damages.  On February 12, 2009, Defendant filed its Counter Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment.  On February 19, 2009, Plaintiffs filed their Opposition to Defendant's Counter Motion for Summary Judgment and Reply in support of their Motion for Summary Judgment.  On February 25, 2009, Defendant filed its Reply in support of its Counter Motion.  A hearing was held on the parties' respective Motions for Summary Judgment on March 2, 2009.  The District Court issued its Certified Question on April 6, 2009.  This court issued its Order On Certified Question on April 20, 2009, allowing the parties to file briefs on the Certified Question in accordance with Hawai'i Rules of Appellate Procedure (HRAP) Rule 28.

II.   STANDARD OF REVIEW

A.   Certified Question

"The supreme court shall have jurisdiction and powers . . . [t]o answer, in its discretion . . . any question or proposition of law certified to it by a federal district or appellate court if the supreme court shall so provide by rule[.]" HRS § 602-5(a)(2) (Supp. 2008).

**\*\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

"When a federal district court or appellate court certifies to the Hawai'i Supreme Court that there is involved in any proceeding before it a question concerning the law of Hawai'i that is determinative of the cause and that there is no clear controlling precedent in the Hawai'i judicial decisions, the Hawai'i Supreme Court may answer the certified question by written opinion." HRAP 13(a).

An issue of law presented by a certified question is reviewed by this court de novo under the right/wrong standard of review. Francis v. Lee Enter., Inc., 89 Hawai'i 234, 236, 971 P.2d 707, 709 (1999).

## III.   DISCUSSION

A.   The Foreclosure Sale was Invalid Under HRS Section 667-5.

HRS section 667-5 authorizes nonjudicial foreclosure under a power of sale clause contained in a mortgage. HRS § 667-5 (Supp. 2008). Section 667-5 reads in relevant part:

> **Foreclosure under power of sale; notice; affidavit after sale.** (a) When a power of sale is contained in a mortgage, and where the mortgagee, the mortgagee's successor in interest, or any person authorized by the power to act in the premises, desires to foreclose under power of sale upon breach of a condition of the mortgage, the mortgagee, successor, or person shall be represented by an attorney who is licensed to practice law in the State and is physically located in the State. The attorney shall:
>
> (1)   Give notice of the mortgagee's, successor's, or person's intention to foreclose the mortgage and of the sale of the mortgaged property, by publication of the notice once in each of three successive weeks (three publications), the last publication to be not less than fourteen days before the day of sale, in a newspaper having a general circulation in the county in which the mortgaged property lies; and

> (2)   Give any notices and do all acts as are authorized or
> required by the power contained in the mortgage.

Id. (emphasis added).  This section specifically requires breach
of a condition of the mortgage as a condition precedent to
foreclosure.  Id.

The Muchmores' mortgage contains a power of sale
clause, which reads in relevant part:

> 22. Acceleration; Remedies.  Lender shall give notice to
> Borrower prior to acceleration following Borrower's breach
> of any covenant or agreement in this Security Instrument . .
> . The notice shall specify: (a) the default; (b) the action
> required to cure the default; (c) a date, not less than 30
> days from the date the notice is given to Borrower, by which
> the default must be cured; and (d) that failure to cure the
> default on or before the date specified in the notice may
> result in acceleration of the sums secured by this Security
> Instrument and sale of the Property.  The notice shall
> further inform Borrower of the right to reinstate after
> acceleration and the right to bring a court action to assert
> the non-existence of a default or any other defense of
> Borrower to acceleration and sale.  If the default is not
> cured on or before the date specified in the notice, Lender
> at its option may require immediate payment in full of all
> sums secured by this Security Instrument without further
> demand and may invoke the power of sale and any other
> remedies permitted by Applicable Law.

This clause requires the Muchmores to be in default and to have
failed to cure the default by the date specified in the notice
before Defendant can invoke its power of sale.

Prior to August 22, 2008, the Muchmores were in default
and Defendant, through its attorney Leu & Okuda, published a
notice of Defendant's intent to foreclose pursuant to HRS section
667-5 by public auction to be held on August 26, 2008.  On
August 20, 2008, HomEq sent a letter to the Muchmores stating

that they owed $14,399.84 to bring their loan current and that HomEq "expressly reserve[d] its right to continue with any enforcement action <u>until the loan is fully reinstated (no longer delinquent) or is paid in full</u>."  On August 22, 2008, the Muchmores wired $14,399.86 to HomEq, which HomEq accepted, thereby reinstating the loan.[1]

On August 25, 2008, HomEq advised its vendor to inform Defendant's foreclosure counsel Leu & Okuda to stop the

---

[1]     In their Opening Brief, Plaintiffs state that they reserve their right to argue that the Muchmores did not cure their loan.  They note that any reference to "cure" or "reinstatement" is for the purpose of argument only and should not be interpreted as a statement of fact, belief, acknowledgment or concession by Plaintiffs.  In their Reply Brief, Plaintiffs expressly argue that the Muchmores did not cure their default prior to the foreclosure sale because paragraph 19 of the mortgage required the Muchmores to cure their default at least five days prior to auction, whereas they paid the reinstatement quote four days prior to auction.  "Accordingly, the foreclosure auction did not violate any provision of the mortgage" because Defendant retained the power of sale.  In its Certified Question, the District Court addressed this issue as follows:

> During the March 2, 2009 [summary judgment] hearing, for the first time, Plaintiff[s] argued that the court need not determine [the issue presented by the Certified Question] because the Mortgage granted Defendant the power to auction the Property regardless of whether the Muchmores cured their default prior to the auction.  The court rejects this argument.  First, regardless of whatever the Mortgage provides, such fact would not obviate the question of whether a mortgagee may foreclose on property pursuant to HRS § 667-5 where the mortgagor has cured the default. Second, HomEq's offer and the Muchmores' acceptance of reinstatement modified any terms of the Mortgage that colorably provide otherwise.  The reinstatement offer expressly reserved HomEq's right to continue with the foreclosure until either "the loan is fully reinstated or paid in full."  Def.'s Ex. 1 (emphasis added).  Because the loan was reinstated before the auction, Defendant no longer had the power of sale.

foreclosure sale.  The vendor, however, failed to so advise Leu & Okuda and the foreclosure sale went forward on August 26, 2008.

HRS section 667-5 specifically requires a "breach of a condition of the mortgage" before a nonjudicial foreclosure sale can be effected.  See HRS § 667-5.  In Silva v. Lopez, we stated that "[t]o effect a valid sale under power, all the directions of the power must be complied with . . . this is unquestioned."  5 Haw. 262, 263 (Haw. Kingdom 1884).  In that case, the mortgage required the mortgagee to effect entry and possession of the property prior to exercising the power of sale, which the mortgagee failed to do.  Id. at 264-65.  We held that the subsequent sale of the property was invalid pursuant to HRS section 667-5[2] because the mortgagee failed to comply with the conditions prescribed in the power of sale in the mortgage.  Id. at 265.

Here, at the time of the foreclosure sale, the Muchmores were no longer in default and, thus, were no longer in breach of the a condition of the mortgage.  Without such breach, Defendant could not invoke the mortgage's power of sale clause.  The subsequent foreclosure sale did not comply with the requirements of HRS section 667-5 and was, thus, invalid.  See

---

[2]    Previously referred to as Chapter XXXIII of the Acts of 1874.  See Silva, 5 Haw. at 264.

9

Silva, 5 Haw. at 263-65; see also HRS § 667-8 (1993) (allowing an affidavit filed by mortgagee describing the foreclosure sale to be admitted as evidence that the power of sale was duly executed where affiant "has in all respects complied with the requirements of the power of sale and the statute").

B.   A Valid Agreement Was Not Formed Between Plaintiffs and Defendant.

Plaintiffs argue that, even if the foreclosure sale is illegal under HRS section 667-5, a valid and enforceable contract was nevertheless formed between Plaintiffs and Defendant for purchase of the Property.  In response, Defendant argues that because it no longer had the power of sale at the time of the foreclosure auction, the sale of the Property to Plaintiffs is void as a matter of law.

1.   **The Purposes of HRS Section 667-5**

The question thus becomes whether a contract to purchase foreclosed property at auction is void where the foreclosure sale was invalid under HRS section 667-5.  The text of the statute does not explicitly address this question and the legislative history is not helpful in providing an answer.  In determining whether a contract is void when made in violation of a statute, we have stated:

> courts will always look to the language of the statute, the subject matter of it, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished

10

> in its enactment; and if, from all these, it is manifest
> that it was not intended to imply a prohibition or to render
> the prohibited act void, the courts will so hold, and
> construe the statute accordingly . . . [T]he statute must be
> examined as a whole, to find out whether or not the makers
> of it meant that a contract in contravention of it should be
> void, or that it was not to be so . . . When the statute is
> silent, and contains nothing from which the contrary can be
> properly inferred, a contract in contravention of it is
> void.

Carey v. The Discount Corp., 36 Haw. 107, 124-25 (Haw. Terr.

1942) (quoting Miller v. Ammon, 145 U.S. 421, 426 (1892)).

In general, the purposes behind nonjudicial foreclosure

statutes are threefold:

> First, the nonjudicial foreclosure process should protect
> the debtor from a wrongful loss of property; second, the
> process should ensure that properly conducted sales are
> final between the parties and conclusive as to bona fide
> purchasers; and third, the process should give creditors a
> quick, inexpensive remedy against defaulting debtors.

Molly F. Jacobson-Greany, Setting Aside Nonjudicial Foreclosure

Sales: Extending the Rule to Cover Both Intrinsic and Extrinsic

Fraud or Unfairness, 23 Emory Bankr. Dev. J. 139, 151 (Fall 2006)

(emphasis added) (citing, e.g., Cox v. Helenius, 693 P.2d 683,

685-86 (Wash. 1985); Moeller v. Lien, 25 Cal.App.4th 822, 830

(Cal. Ct. App. 1994)).

The text of HRS section 667-5 shows it to be consistent

with these purposes.  The statute's requirements that there be a

breach of condition of the mortgage and that the mortgagee give

public notice of its intent to foreclose before it can exercise

the power of sale evince the desire to protect the mortgagor from

a wrongful loss of property.  The statute requires the mortgagee to file an affidavit setting forth the mortgagee's acts in the premises fully and particularly.  See HRS § 667-5(d).  That the affidavit shall be admitted as evidence that the power of sale was duly executed demonstrates the legislature's intent to promote the finality of properly conducted sales.  See HRS § 667-8 (1993).[3]  Allowing mortgagees to foreclose by power of sale pursuant to HRS section 667-5, rather than through judicial foreclosure,

> is relatively quick and inexpensive.  It does not require a lengthy time period between the notice of default and foreclosure sale, and does not require court costs and legal fees associated with discovery and drafting of pleadings.

Georgina W. Kwan, Mortgagor Protection Laws: A Proposal for Mortgage Foreclosure Reform in Hawai'i, 24 U. Haw. L. Rev. 245, 253 (Winter 2001) (internal citations omitted).[4]

---

[3]     HRS section 667-8 states as follows:

> **Affidavit as evidence, when.**  If it appears that the affiant has in all respects complied with the requirements of the power of sale and the statute, in relation to all things to be done by the affiant before selling the property, and has sold the same in the manner required by the power, the affidavit, or a duly certified copy of the record thereof, shall be admitted as evidence that the power of sale was duly executed.

HRS § 667-8 (1993).

[4]     In 1998, the legislature passed an alternative nonjudicial foreclosure measure, which is more detailed than HRS section 667-5.  See HRS §§ 667-21, et seq. (Supp. 2008).  The legislative history behind this alternative process gives some insight into the purposes behind HRS section 667-5.  In passing HRS sections 667-21, et seq., titled "Alternative Power of Sale Foreclosure Process", the "legislature sought to 'provide[ ] an alternate

continue...

*** FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER ***

>    2.   **Holding a Nonjudicial Foreclosure Sale Void Where the Sale was Invalid Under HRS Section 667-5 is Consistent with the Purposes of the Statute.**

Plaintiffs note that "no state statute creates a right in mortgagees to proceed by non-judicial foreclosure; the right is created by contract." A mortgagee, or an entity acting on its behalf, cannot, however, proceed with a nonjudicial foreclosure under a power of sale clause in the mortgage unless it complies with either HRS section 667-5, or its alternative HRS sections 667-21, et seq.[5] Without such compliance, the mortgagee has no legal authority to exercise its power of sale in a nonjudicial foreclosure sale. Enforcing a contract arising out of an invalid foreclosure sale would not serve any of the purposes of HRS section 667-5. See Carey, 36 Haw. at 125 ("When the statute is silent, and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void.").

---

[4]...continue

nonjudicial foreclosure process which reduces the time and cost of the current foreclosure process and contains additional safeguards not required in the current power of sale foreclosure law that are needed to protect the interests of consumers.'" Aames Funding Corp. v. Mores, 107 Hawai'i 95, 102, 110 P.3d 1042, 1049 (2005) (emphasis added) (quoting Conf. Com. Rep. No. 75, in 1998 House Journal, at 979).

[5]   A mortgagee may elect to proceed either under HRS section 667-5 or HRS 667-21, et seq. See HRS § 667-21 (Supp. 2008); see also David C. Farmer, Esq., Hawaii Enacts Expedited Nonjudicial Foreclosure Process, 2-NOV Haw. B.J. 42 (November, 1998). Here, Defendant elected to proceed under HRS section 667-5.

Thus, we hold that an agreement created at a foreclosure sale conducted pursuant to HRS section 667-5 is void and unenforceable where the foreclosure sale is invalid under the statute. The high bidder at such a sale is entitled only to return of his or her downpayment plus accrued interest.

 a. Authority from other jurisdictions.

This conclusion is in accord with other states that have considered the issue.[6] In Residential Capital, LLC v. Cal-Western Reconveyance Corp., 108 Cal.App.4th 807, 811 (Cal. Ct. App. 2003), the borrower negotiated a repayment plan with its bank that cured its default and reinstated the loan. The borrower and the bank agreed to postpone the foreclosure sale. Id. at 811-12. The foreclosure sale went forward, however,

---

[6]   Plaintiffs argue that the persuasive value of non-Hawai'i authorities is limited because "there are striking textual differences" between HRS section 667-5 and the nonjudicial foreclosure statutes from other jurisdictions. While it is true that HRS section 667-5 is less detailed and protective than the non-judicial foreclosure statutes in California (Cal. Civ. Code §§ 2924-2924k), Oregon (Oregon Revised Statutes §§ 86.705-86.735) and Idaho (Idaho Code §§ 45-1505 through 45-1508), it still shares the same basic purposes. See Residential Capital, LLC v. Cal-Western Reconveyance Corp., 108 Cal.App.4th 807, 821 (Cal. Ct. App. 2003) ("[T]he purposes of the nonjudicial foreclosure sale statutes are to protect the trustor (debtor) from wrongful loss of the property and to provide a quick, inexpensive, and efficient remedy for creditors of defaulting debtors . . . In addition . . . the statutory scheme also evidences an intent that a properly conducted sale be a final adjudication of the rights of creditor and debtor and the sanctity of title of a bona fide purchaser be protected."); see also Staffordshire Inv., Inc. v. Cal-Western Reconveyance Corp., 149 P.3d 150, 155, 157 (Or. App. 2006) (noting that Oregon and Idaho have similar nonjudicial foreclosure statutes and holding that Oregon's nonjudicial foreclosure statutes "represent a well-coordinated statutory scheme to protect grantors from the unauthorized foreclosure and wrongful sale of property, while at the same time providing creditors with a quick and efficient remedy against a defaulting grantor.").

*** **FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER** ***

because the foreclosure trustee failed to read an email instructing it to postpone the sale. Id. at 812. The day after the bidding, the foreclosure trustee realized its mistake, advised the purchaser that it did not have the authority to conduct the sale and that the trustee's deed would not be issued, and returned the purchaser's checks with interest. Id.

The purchaser, like Plaintiffs in the instant case, argued that the foreclosure sale "was not void but merely illegal" and as such it was entitled to benefit-of-the-bargain damages. Id. at 813-14. The Purchaser further argued that it was the innocent party and that the mistaken party should bear the consequences of its mistake. Id. at 815-16.

The court enumerated the purposes of California's nonjudicial foreclosure statutes as: 1) protecting debtor from a wrongful loss of property, 2) providing an inexpensive and efficient remedy for creditors, and 3) promoting the finality of properly conducted sales. Id. at 821. The court stated that the proper inquiry

> is whether, recognizing the purposes of the statutory
> scheme, there is a substantial defect in the statutory
> procedure that is prejudicial to the interests of the
> [borrower] and claimants. It seems inconsistent for
> [plaintiff] to contend that although a postponement of the
> sale occurred and the [borrower] was not bound by the sale,
> a separate conflicting contractual sale obligation
> nevertheless came into existence on its behalf against the
> trustee and [bank]. The agreement to postpone the sale
> [pursuant to the nonjudicial foreclosure statute] cannot be
> disregarded in evaluating whether the sale procedure was

> substantially defective.  Only a properly conducted
> foreclosure sale, free of substantial defects in procedure,
> creates rights in the high bidder at the sale.

Id. at 822 (internal citations omitted).  Because the borrower's statutory right to postpone the nonjudicial foreclosure sale by agreement with the bank was not complied with, the sale was substantially defective and did not create rights in the high bidder.  Id. at 822-23.  The court went on to find that because the defect in procedure was detected before the trustee's deed issued, plaintiff was not prejudiced and was entitled only to a return of its downpayment plus interest.  Id. at 823-24.

In Staffordshire Investments, Inc. v. Cal-Western Reconveyance Corp., 149 P.3d 150, 152 (Or. App. 2006), the borrower and bank entered into a forbearance agreement and, in accordance with that agreement, the bank agreed to postpone the nonjudicial foreclosure sale.  Due to a miscommunication between the bank and its foreclosure trustee, the sale went forward.  Id. at 153.  After the bank learned of the sale, it instructed the foreclosure trustee not to issue the trustee's deed to plaintiff, the high bidder at auction.  Id.  The foreclosure trustee returned plaintiff's purchase funds the next day.  Id.

The court determined that, under terms of the forbearance agreement, there was no default for which the power of sale was authorized under Oregon's nonjudicial foreclosure

16

statutes. Id. at 154. The court stated that the purposes of Oregon's nonjudicial foreclosure statutes are to protect debtors from unauthorized foreclosure and wrongful loss of property and to provide creditors with a quick and efficient remedy against a defaulting debtor. Id. at 157. Voiding the foreclosure sale was consistent with Oregon's statutory scheme because

> [t]hose provisions reflect the legislature's intent to protect the [debtor] against the unauthorized loss of its property and to give the [debtor] sufficient opportunity to cure the default. The ability of the [debtor] to postpone the sale by entering into, and complying with, a forbearance agreement with the [creditor] furthers that legislative intent. Enforcing a sale of the property at auction despite the existence of such an agreement would undermine that purpose of the Act.

Id. at 158. The court further held that

> although plaintiff was the high bidder at the foreclosure sale, the discovery of the agreement to postpone the sale before execution of the trustee's deed renders the contract void and plaintiff's remedy is limited to return of the purchase funds and, if applicable, interest. This result properly restores the parties to the positions they would have occupied had the wrongful sale not occurred.

Id.

In Taylor v. Just, 59 P.3d 308, 310 (Idaho 2002), the borrowers entered into a forbearance agreement with their bank under which the bank agreed not to proceed with the scheduled foreclosure sale. The bank sent an email to the foreclosure trustee, but due to a problem with his Internet provider, the trustee did not receive the email until a day after the foreclosure sale had taken place. Id. Four days after the

foreclosure sale, the foreclosure trustee informed plaintiff, the high bidder, of the mistake and returned the purchase price. Id.

The court found that the Idaho nonjudicial foreclosure statutes require the borrower to be in default at the time the foreclosure sale takes place. Id. at 311. Due to the forbearance agreement, the borrowers were not in default at the time of the foreclosure sale. Id. at 312. For this reason, the court held the foreclosure sale was void for failure to comply with the statute and the subsequent contract between the high bidder and the bank was likewise void. Id. at 312-13.

Plaintiffs argue that this court should follow the decision of the District of Columbia Court of Appeals in Basiliko v. Pargo Corp., 532 A.2d 1346 (D.C. 1987). In that case, the borrowers cured their default five minutes before close of business on the day before the foreclosure sale. Id. at 1347. The payment, while credited in the bank's computer, did not come to the attention of the foreclosure trustees who continued with the sale. Id. The foreclosure trustees refused to convey the property to plaintiff, the high bidder, because they had been without authority to hold the sale. Id.

The court noted that the general rule in the District of Columbia is that the seller who breaches an executory contract for the sale of real property is liable to the would-be purchaser

18

for benefit-of-the-bargain damages. Id. at 1348. Though the foreclosure sale in Basiliko was conducted pursuant to a power of sale clause in the deed of trust, the court did not engage in any discussion of a nonjudicial foreclosure statute, nor did it state whether the District of Columbia has a statute that governs such sales. The court held that it could "find no justification in law or policy for such exceptional treatment in the case of a foreclosure sale." Id. Because the Basiliko court did not analyze the impact of a nonjudicial foreclosure statute on the contract at issue, Basiliko is distinguishable from the present case and of less persuasive value than the Residential Capital, Staffordshire, and Taylor cases cited above.

      b.    Plaintiffs' arguments regarding encouraging competitive bidding are unpersuasive.

Plaintiffs contend that a purpose of HRS section 667-5, protecting mortgagors, is served by encouraging competitive bidding at public auction, which would reduce "the risk that the mortgaged property will be sold for less than the loan balance." Plaintiffs argue that failure to enforce their contract with Defendant would "send a signal to prospective bidders at non-judicial foreclosure sales that their contractual expectations are not subject to protection, and would dampen competitive bidding." Further, failure to enforce the contract would,

19

Plaintiffs argue, encourage "sloppy business practices" by mortgagees because mortgagees would be assured "that they will not be held contractually accountable to purchasers if they fail to exercise due care in foreclosing under power of sale."

Plaintiffs are correct that encouraging competitive bidding promotes the protection of mortgagors, one of the purposes of HRS section 667-5. However, their argument that failure to enforce the contract at issue would discourage competitive bidding is unpersuasive. The situation at issue in this case, where a mortgagor cures its default prior to a foreclosure sale conducted pursuant to HRS section 667-5, but through the mortgagee's mistake the sale goes forward anyway, is apparently rare as this is a case of first impression in this jurisdiction despite the fact that HRS section 667-5 was enacted in 1874. See HRS § 667-5 (Supp. 2008). Plaintiffs' argument that failure to enforce its contract with Defendant would discourage competitive bidding at nonjudicial foreclosure sales is simply too attenuated.

Further, there is no reason to think that failure to enforce the contract at issue would encourage "sloppy business practices" by mortgagees. It is in the mortgagees' best interests to conduct a foreclosure sale in compliance with the

20

dictates of HRS section 667-5, rather than going through costly litigation to correct an invalid sale.

Finally, the parties have been returned to the position they would have occupied had the wrongful sale not occurred. Plaintiffs are entitled to, and have received, return of their downpayment plus accrued interest.

### 3.   Plaintiffs' Remaining Arguments Are Inapposite

Plaintiffs make several other arguments in support of their position that they are entitled to lost profits from their contract with defendant.[7] These arguments, however, are inapposite because they fail to discuss the enforceability of land sale contracts conducted pursuant to Hawai'i's nonjudicial foreclosure statutes.

For example, Plaintiffs cite <u>Territory of Hawai'i v. Branco</u>, 42 Haw. 304, 316 (Haw. Terr. 1958), for the proposition that "[i]t is elementary in the law of contracts that at an auction an enforceable contract is formed upon the fall of the

---

[7] Plaintiffs' additional arguments are: 1) Hawai'i courts recognize the general rule that a contract is formed at the fall of the auction hammer, 2) Where title is not passed at auction, Hawai'i case law suggests that the seller's acceptance of the high bid creates an executory contract to convey real property, 3) Under Hawai'i law, where a party contracts to convey real property, inability to convey for lack of good title ordinarily does not discharge contractual liability to purchaser, 4) The "American Rule" followed by Hawai'i courts entitles a disappointed purchaser of real property to the benefit of its bargain, and 5) The American Rule has been applied in the context of nonjudicial foreclosure sales conducted in wrongful exercise of the mortgagee's power of sale.

hammer." The auction in question was not conducted under HRS section 667-5. Further, the court found that the auction was conducted pursuant to legal authority. Id. at 312-16.

Plaintiffs cite Warner v. Denis, 84 Hawai'i 338, 347-48, 933 P.2d 1372, 1381-82 (App. 1997) and Farrow v. Sunra Coffee, LLC, Civil No. 05-00715, 2006 WL 2884086, *7-9 (D. Haw. Oct. 6, 2006), for the proposition that the defense of impossibility does not excuse performance of a land sale contract and does not shield the seller from damages. Neither case dealt with a nonjudicial foreclosure sale that must be conducted pursuant to the requirements of HRS section 667-5. Cf. State v. Kahua Ranch, Ltd., 47 Haw. 28, 36, 384 P.2d 581, 586 (1963) (where a statute forbade any agreement between the State and a prospective bidder for a lease of State land inconsistent with the terms of the notice of sale as published, we held that "[a]ny such agreement contrary to the terms of the published notice of sale would be illegal and unenforceable. Otherwise, the statutory requirements become meaningless.").

Plaintiffs contend that in Burgess v. Arita, 5 Haw. App. 581, 589-90, 704 P.2d 930, 937 (1985), Hawai'i adopted the "American Rule," under which the buyer of land is entitled to recover ordinary contract damages, measured by the difference between the contract price and the market value of the land, when

22

*** FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER ***

the seller breaches the land sale contract.  While true, this proposition does not answer the question of whether Plaintiffs are entitled to damages from a contract arising out of an invalid nonjudicial foreclosure sale.  For instance, in <u>Residential Capital</u>, 108 Cal.App.4th at 822-24, the California Court of Appeal found that a disappointed purchaser in a sale which was invalid under California's nonjudicial foreclosure statutes was entitled only to a return of the purchase price plus interest, despite the fact that California is an American Rule jurisdiction.  <u>See</u> Cal. Civ. Code § 3306; <u>see also</u> <u>Burgess</u>, 5 Haw. App. at 590 n.11 (listing California as an American Rule jurisdiction).

Plaintiffs also argue that the District of Columbia Court of Appeals in <u>Basiliko</u> held that the American Rule applied in nonjudicial foreclosure sales.  For reasons discussed earlier herein, <u>Basiliko</u> is distinguishable from the present case and unpersuasive.

IV.   <u>CONCLUSION</u>

Based on the foregoing analysis, we hold that an agreement created at a foreclosure sale conducted pursuant to HRS section 667-5 is void and unenforceable where the foreclosure sale is invalid under the statute and that the high bidder at

such a sale is entitled only to return of his or her downpayment plus accrued interest.

On the briefs:

Steven K. S. Chung
and Chanelle M. Chung
(of Steven Chung and
Associates LLLC) for
plaintiffs-appellants
Steven D. Lee and
KMK Holdings, LLC

Paul Alston and
J. Blaine Rogers
(of Alston Hunt Floyd &
Ing) for defendants-
appellees HSBC Bank USA,
National Association as
Trustee under Pooling and
Servicing Agreement Dated
as of April 1, 2007 SG
Mortgage Securities Trust
2007 NC1 Asset Backed
Certificates, Series 2007
NC1